United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Y.M.C.P.,

Petitioner,

v.

SERGIO ALBERRAN, et al.,

Respondents.

Case No. 26-cv-08341-CRB

**ORDER GRANTING PRELIMINARY INJUNCTION**

Judge Donato issued a TRO in this case, holding that Petitioner Y.M.C.P.[1] had raised at least a serious question that her re-detention without a pre-deprivation hearing at a routine ICE check-in violated the preliminary injunction issued in Garro Pinchi v. Noem, 813 F. Supp. 3d 973 (N.D. Cal. 2025), and the Due Process Clause of the Fifth Amendment. See Order Granting TRO (dkt. 5) at 1–2. He further held that in light of Y.M.C.P.'s "potentially unlawful detention and deprivation of her liberty, the balance of hardships tips sharply in her favor." Id. at 2 (citing Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017)). Accordingly, he ordered Respondents to immediately release Y.M.C.P., and enjoined them from re-detaining her without a pre-detention hearing before a neutral magistrate. Id. at 3. The TRO expires August 25, 2026. Id. This Court now analyzes whether a preliminary injunction should issue.

[1] Y.M.C.P. requested that the Court use her initials, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Pet. (dkt. 1) at 1 n.1 (citing Memo. Re: Privacy Concern Re Social Security & Immigration Opinions, May 1, 2018, available at https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf).

## I. BACKGROUND

The most significant facts are as follows.

Y.M.C.P. is a citizen of Venezuela who entered the United States to seek asylum after her father was murdered by members of Tren de Aragua, and she, her husband, her daughter, her mother, and her sister were all also threatened with death. Pet. ¶ 3. Though the family reported the murder, the government in Venezuela did nothing. Id. Y.M.C.P. and her husband and daughter fled to the United States. Id. Y.M.C.P. was placed in removal proceedings on August 14, 2022, and filed an asylum application on August 3, 2023. Id. ¶ 4. Respondents released Y.M.C.P. into the United States on her own recognizance. Id.

On July 24, 2026, SFPD arrested Y.M.C.P. following a domestic dispute while she and her husband were driving back from the dentist. Id. ¶ 40. She was charged with one count of Cal. P.C. § 243(e)(1), battery, a misdemeanor, and has remained out of custody pending the resolution of her criminal case. Id. She has no other criminal history. Id.

On August 11, 2026, Y.M.C.P. reported to an ICE check-in at the San Francisco field office. Id. ¶ 41. She was detained under an administrative arrest warrant issued by an immigration officer. Id. Y.M.C.P. filed a habeas petition that same day, arguing that she was arrested pursuant to the re-detention policy enjoined by Garro Pinchi and that her re-detention also violated her right to procedural and substantive due process. Id. ¶¶ 65–79. She applied for a TRO, App. for TRO (dkt. 4), and Judge Donato granted it, see Order Granting TRO. Judge Donato directed Respondents to show cause why a preliminary injunction should not issue. Id. at 3. Respondents have now done so, see Resp. (dkt. 10), and Y.M.C.P. has replied, see Reply (dkt. 11).

## II. LEGAL STANDARD

A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc.,

United States District Court
Northern District of California

555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." Nken v. Holder, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

## III. DISCUSSION

Y.M.C.P. has satisfied the requirements for injunctive relief.

### A. Likely Success on the Merits

#### 1. Violation of Garro Pinchi

Y.M.C.P. is likely to succeed in demonstrating that her re-detention violated the APA and was an unlawful application of a stayed policy.

First, Y.M.C.P. appears to be a class member in Garro Pinchi. In that case, Judge Pitts certified a class consisting of "all noncitizens in the jurisdiction of ICE's San Francisco field office who (1) entered or will enter the United States without inspection; (2) have been or will be charged with inadmissibility under 8 U.S.C. § 1182 and have been or will be released from DHS custody; and who (3) are in removal proceedings under 8 U.S.C. § 1229a . . . ; and (4) are not subject to detention under 8 U.S.C. § 1226(c)." Garro Pinchi, 813 F. Supp. at 1010. Y.M.C.P. is in the jurisdiction of the San Francisco ICE field office; (1) entered the United States without inspection; (2) has been charged with inadmissibility under 8 U.S.C. § 1182 and was released from DHS custody; (3) is in removal proceedings under 8 U.S.C. § 1229a; and (4) is not subject to detention under 8 U.S.C. § 1226(a). See App. for TRO at 4.

Next, Y.M.C.P. is likely to succeed in demonstrating that her re-detention on

August 11 violated the injunction issued in Garro Pinchi. In that thorough opinion, Judge Pitts documented how "DHS for decades limited the re-detention of noncitizens released pursuant to its discretionary authority under § 1226(a), revoking a noncitizen's bond or parole under § 1226(b) only if it determined that the noncitizen's individual circumstances had materially changed." Id. at 995. He observed that that practice changed in May of 2025, when "DHS officers began re-arresting and re-detaining noncitizens whom DHS had previously released pursuant to § 1226(a) without first making any individualized determination of changed circumstances." Id. at 995–96. And he held that that new "re-detention policy" is likely arbitrary and capricious, in violation of the APA. Id. at 1027. Judge Pitts therefore stayed the re-detention policy pending final resolution of the APA claim, postponing the policy's effective date in this area. Id. at 1039–40.

Y.M.C.P. appears to have been re-detained without DHS first making any individualized determination that there are changed circumstances as to her dangerousness or flight risk. Respondents do not actually argue to the contrary. The only two exhibits to Respondents' brief date to 2022. See Starrett Decl. Ex. 1 (dkt. 10-2) at 1–4 ("Record of Deportable/Inadmissible Alien," dated 09/14/2022); Starrett Decl. Ex. 2 (dkt. 10-2) at 5–8 ("Order of Release on Recognizance," dated 08/15/2022). Neither reflects any decision to re-detain Y.M.C.P. in August 2026. The only basis in the record as to changed circumstances—Y.M.C.P.'s July misdemeanor arrest—is contained not in any document reflecting Respondents' decisionmaking prior to re-detaining Y.M.C.P., but in Respondents' argument in their brief. Even giving Respondents the benefit of the doubt that their present reliance on the July misdemeanor arrest is not a post hoc rationalization, that arrest, stemming from a domestic dispute with her husband, does not plausibly give rise to an inference that there has been a material change in Y.M.C.P.'s dangerousness to the community. See Pet. ¶ 40.[2] "Courts have repeatedly rejected the argument that ICE

[2] Respondents' brief contains a number of concerning statements brushing off the inconvenient reality that (1) Y.M.C.P. has not yet been convicted of anything, see Pet. ¶ 40, and (2) "[p]rior to conviction, the accused is shielded by the presumption of innocence, the 'bedtock[,] axiomatic, and elementary principle whose enforcement lies at the

United States District Court
Northern District of California

can re-detain a noncitizen for technical violations 'without regard to whether that technical violation means that one is a flight risk or danger.'" A.F.A.M. v. Albarran, No. 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025) (collecting cases).

Because Y.M.C.P. appears to have been re-detained without DHS first making any individualized determination that there are changed circumstances as to her dangerousness or flight risk, the Court concludes that DHS detained Y.M.C.P. not pursuant to the old detention policy documented by Judge Pitts, but pursuant to the new re-detention policy that he enjoined. Remarkably, Respondents do not address Garro Pinchi at all in their briefing—notwithstanding the case's prominence in Y.M.C.P.'s habeas petition and application for a TRO, and in Judge Donato's order. Indeed, Respondents discuss 8 U.S.C. §§ 1225 and 1226 as if Garro Pinchi did not exist. See, e.g., Resp. at 1 ("Regardless of if 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226 applies to Petitioner, Petitioner's arrest for domestic violence demonstrates that she is a danger to the community and constitutes a material change in circumstances since her prior release that justifies her re-arrest."), id. ("Petitioner's re-arrest complied with the INA and the regulations, neither of which requires a pre-deprivation hearing."). Whether Respondents' failure to address obviously relevant authority in its briefing constitutes a waiver, see Corro-Barrigan v. Holder, 718 F.3d 1174, 1177 n.5 (9th Cir. 2013), or a litigation strategy, or both, does not ultimately matter. Garro Pinchi controls, and Y.M.C.P.'s re-detention likely violated it.

---

foundation of the administration of our criminal law," see Betterman v. Montana, 578 U.S. 437, 442 (2016). See Resp. at 1–2 ("Petitioner's domestic violence arrest constitutes a violation of the terms of Petitioner's release on the order of recognizance in that Petitioner was ordered not to commit any crimes,") (emphasis added), id. at 4–5 (same), id. at 5 ("Though Petitioner may not have yet been formally convicted following this arrest"—what does "formally" mean here?—"there are a host of reasons, despite the commission of a criminally sanctionable act, that may prevent an arrest from resulting in a conviction"), id. ("Petitioner's criminal conduct") (emphasis added), id. at 6 ("Petitioner cannot claim that the government promised her ongoing freedom or that she reasonably believed she would remain at liberty even if she engaged in criminal conduct.") (emphasis added). Respondents even go so far as to assert that "[T]here is no dispute that Petitioner engaged in criminal activity after her conditional release," id. at 5, without citing any support therefor.

**2. Violation of Due Process**

Y.M.C.P. is also likely to succeed in demonstrating that her re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment. "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

**a. Procedural Due Process**

Y.M.C.P. is likely to succeed on her procedural due process claim.

The Court joins numerous others in this circuit in concluding that the three-part test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), applies in the immigration detention context. See Claros v. Albarran, 811 F. Supp. 3d 1062, 1066 (N.D. Cal. 2025) (collecting cases). Mathews requires consideration of (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

**i. Private Interest**

"A protected liberty interest may arise from a conditional release from physical restraint." Cordero Pelico v. Kaiser, 25-CV-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025) (quoting Rodriguez v. Kaiser, No. 1:25-cv-01111-KES-SAB (HC), 2025 WL 2545359, at *4 (E.D. Cal. Sept. 4, 2025)). That is so even when the initial decision to release an individual results from the exercise of discretion. Id. (citing Calderon v. Kaiser, No. 25-cv-6695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025)). Non-citizens detained at ICE check-ins after their initial release are subject to 8 U.S.C. § 1226(a), which allows for the exercise of discretion. See Rodriguez Vasquez v. Bostock, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026); 8 U.S.C. § 1226(a) ("the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on . . . conditional parole."). "[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Cordero Pelico, 2025 WL 2822876, at *6 (citing Ramirez v Clavijo v. Kaiser, 25-cv-06248-BLF, at *6 (N.D. Cal. Aug. 21, 2026)); see also Garro Pinchi, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)

("even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Here, Y.M.C.P. gained a liberty interest when Respondents released her from custody on her own recognizance in 2022. Pet. ¶ 4. While out of custody, Y.M.C.P. has formed the "attachments of normal life." See Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Pet. ¶ 10 ("Since her release from custody . . . around August 2022, Y.M.C.P. filed a timely application for asylum and fear-based relief, obtained work authorization, and maintained steady employment."), ¶ 39 ("[Y.M.C.P.] has been with her husband for twelve years. . . . the couple has remained united and happy despite the stressors of life. [Y.M.C.P.] maintains stable employment as a food delivery person. On her days off this summer, she enjoyed taking her daughter sightseeing around the city."). Respondents' arguments to the contrary, see, e.g., Resp. at 6–8, are unpersuasive. See, e.g., Mena v. Albarran, No. 26-cv-04749-BLF, 2026 WL 1549201, at *5–6 (N.D. Cal. June 1, 2026) (rejecting same arguments); Doe v. Albarran, No. 25-cv-8774-VC, 2025 WL 3141224, at *2 (N.D. Cal. Nov. 10, 2025) (rejecting same arguments).

Y.M.C.P. has a significant liberty interest in her continued freedom.

**ii. Risk of Erroneous Deprivation**

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." Claros, 811 F. Supp. 3d at 1069. Of course it would. "'[T]he risk of an erroneous deprivation [of liberty] is high' where, as here, [the petitioner] has not received any bond or custody redetermination hearing." See Singh v. Andrews, No. 1:25-cv-00801, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. July 11, 2025). That is because without a pre-deprivation hearing—"one of the most basic due process protections"—"neither party will have had an opportunity to determine whether there is any valid basis for the petitioner's detention." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025).

Although Respondents here assert that Y.M.C.P. "is a danger to the community,"

their support for that assertion is her single misdemeanor arrest involving a domestic dispute with her husband. See Resp. at 5. As the Court has already noted, that arrest has not yet been adjudicated.[3] Moreover, Y.M.C.P. "has no prior arrests and no prior criminal history anywhere in the world," Reply at 1, and was released twice previously—first when DHS released her on her own recognizance in August 2022[4] and next when she was released pending resolution of her criminal case, see Pet. ¶¶ 10, 40—because, presumably, those releasing her determined that she is not a flight risk or a danger to the community. See Duong, 800 F. Supp. 3d at 1041–42 (stating that petitioners have a stronger due process concern where there has already been a determination that they did not present a flight risk or danger to the community). Given Y.M.C.P.'s lack of any other contacts with law enforcement, her compliance with ICE check-ins, her ongoing efforts to seek asylum based on indisputably compelling claims, her work authorization, steady employment, and her twelve year relationship with her husband, it is not clear that an immigration judge would now find her a flight risk or danger to the community. See Claros, 811 F. Supp. 3d at 1069; see also Duong, 800 F. Supp. 3d at 1040 ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."). "Providing [Y.M.C.P.] with a pre-detention hearing will help ensure any future detention is lawful." See A.F.A.M., 2025 WL 3752190, at *4.

In addition, the Court disagrees with Respondents' contention that Y.M.C.P. need not get a pre-deprivation hearing, because a post-deprivation hearing will do. See Resp. at 8 (relying on Rodriguez Diaz, 53 F.4th at 1196–97). Judge Chhabria dismantled that

---

[3] For this same reason, Respondents' repeated assertion that the arrest "was a direct violation of the conditions of Petitioner's release," see Resp. at 5–6, also falls flat. Y.M.C.P. was warned that "any violation of the conditions of her release would result in her arrest," see Starrett Decl. Ex. 2 ("That you do not commit any crimes"), but Y.M.C.P. would not have been on notice that even being arrested for a crime would subject her to re-detention.

[4] "No matter which [detention] provision[] applies to a given noncitizen . . . release is available only where a DHS officer or immigration judge has first determined that a noncitizen neither poses a threat to the public nor is likely to abscond." Garro Pinchi, 813 F. Supp. 3d at 994.

argument in Doe, 2025 WL 3141224, at *2 (explaining that "neither the Supreme Court nor the Ninth Circuit have held that a petitioner who is subject to mandatory detention (but is nonetheless voluntarily released for years) can be re-detained without any hearing."). Y.M.C.P. was not even subject to mandatory detention. See Resp. at 4 (acknowledging that per Rodriguez Vazquez, section 1226(a) governs). Y.M.C.P. is therefore entitled to a hearing pre-deprivation. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Garro Pinchi, 792 F. Supp. 3d at 1033 ("Each of the three Mathews factors supports Ms. Garro Pinchi's constitutional right to a hearing before a neutral decisionmaker prior to any future detention"); M.R.R. v. Chestnut, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at * (E.D. Cal. Nov. 24, 2025) (holding that while "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," pre-deprivation hearings are more likely required where the alleged violation is minor); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent conditions, a pre-deprivation hearing is required to satisfy due process"); Romero v. Kaiser, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("due process requires a hearing before an IJ prior to re-detention").

The risk of an erroneous deprivation without a pre-deprivation hearing is therefore high.

### iii. Government Interest

Courts must consider the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

As in Garro Pinchi, 792 F. Supp. 3d at 1036, there is "no countervailing government interest . . . that supports conducting a bond hearing only after [Y.M.C.P.] has been detained, rather than in advance thereof." Although the government asserts an interest in re-arresting Y.M.C.P., see generally Resp., "its interest in doing so without a hearing is low," Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). The government's

interest is further diminished where a petitioner has consistently appeared and lacks a criminal record. Garro Pinchi, No. 25-5632-RMI (RFL), 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025). And the fiscal and administrative burdens of a pre-deprivation hearing are insignificant. See Garro Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous."); Singh, 2025 WL 1918679, at *8 ("In immigration court, custody hearings are routine and impose a minimal cost.").

The government's interest in detaining Y.M.C.P. without a pre-deprivation hearing is therefore low.

**iv. Conclusion as to Mathews Factors**

The Mathews factors weigh in favor of Y.M.C.P., and she has shown a likelihood of success on her procedural due process claim.

**b. Substantive Due Process**

Y.M.C.P. is also likely to succeed on her substantive due process claim.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvyfas, 533 U.S. at 690. The only two justifications for immigration detention are (1) "ensuring the appearance of aliens at future immigration proceedings" and (2) "[p]reventing danger to the community." Id. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017)

When Respondents released Y.M.C.P. on her own recognizance in August 2022, they determined that she was not a flight risk or a danger to her community. See Garro Pinchi, 813 F. Supp. 3d at 994 ("release is available only where a DHS officer or immigration judge has first determined that a noncitizen neither poses a threat to the public nor is likely to abscond."). Nothing since then compels a different determination. There is

no reason to think that Y.M.C.P. is a flight risk: she is an asylum seeker who was detained at her routine ICE check-in, see Pet. ¶¶ 2–4, 17, 41, and she has attended all of her immigration court hearings. Id. ¶ 38. Nor is the Court persuaded that Y.M.C.P.'s single arrest for a misdemeanor stemming from a domestic dispute with her husband reveals her to be a danger to the community. She was released from criminal custody pending the resolution of that criminal case, and has no prior criminal history. Id. ¶ 40.

Y.M.C.P. is likely to succeed in demonstrating that her individual circumstances have not "changed such that they now pose a flight risk or danger to the community." See Garro Pinchi, 813 F. Supp. 3d at 1036. Her detention would therefore "lack a valid basis and violate [her] right to be free from impermissible government custody." See Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025). She is, accordingly, likely to succeed in demonstrating that her re-detention without a pre-deprivation hearing violated her substantive due process rights. See Garro Pinchi, 813 F. Supp. 3d at 1036. ("re-detention of non-citizens without determining that their individual circumstances have materially changed thus carries a significant risk—now actualized in many cases—of violating their substantive due process rights.").

**B. Other Winter Factors**

Y.M.C.P. has also demonstrated a likelihood of immediate, irreparable injury in the absence of temporary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). The Ninth Circuit has specifically recognized "the irreparable harm imposed on anyone subject to immigration detention." Id. at 995. Y.M.C.P.'s family, including her 10-year old daughter, would also suffer. See Pet. ¶ 39; see also Hernandez, 872 F.3d at 995 (recognizing "collateral harms to children of detainees whose parents are detained.").

The balance of the equities and public interest, which merge in this case, also favor the granting of a TRO. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs

to the public of immigration detention are staggering." Jorge M. F. v. Wilkinson, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); see Melendres, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Y.M.C.P.] is significant, while the potential harm to the government is minimal." Pablo Sequen v. Kaiser, No. 25-cv-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025). At most, the government faces a short delay in detaining Y.M.C.P. if it ultimately demonstrates that her detention is appropriate. The government is also not "harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).

Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Y.M.C.P.'s] favor." Hernandez, 872 F.3d at 996 (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for preliminary injunction.

Respondents, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this injunction, are ENJOINED from detaining petitioner Y.M.C.P. without a pre-detention hearing before a neutral decisionmaker.

There is no realistic likelihood of harm to Respondents from enjoining their conduct, and so Y.M.C.P. need not give security under Rule 65(c) of the Federal Rules of Civil Procedure. See Jorgensen v. Cassiday, 320 F.3d 906, 919-20 (9th Cir. 2003);

Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999).

**IT IS SO ORDERED.**

Dated: August 25, 2026

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California